# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BIOCONVERGENCE LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-mc-101 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 34, 35, 44, |
| | : | | 50, 56, 57, 71, 72 |
| | : | | |
| JASPREET ATTARIWALA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**DENYING NON-PARTY'S MOTION TO QUASH SUBPOENA; DENYING REMAINDER OF PLAINTIFF'S MOTION TO COMPEL TO PRESERVE AND PRODUCE COMMUNICATIONS; GRANTING IN PART AND DENYING IN PART PLAINTIFF AND NON-PARTY'S PROPOSED INSPECTION PROTOCOLS; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL RESUMED DEPOSITION; DENYING PLAINTIFF'S MOTIONS TO COMPEL, HOLD IN CONTEMPT, AND SANCTION; DENYING PLAINTIFF'S MOTION FOR AN EVIDENTIARY HEARING; AND GRANTING PLAINTIFF'S MOTION TO FILE DOCUMENTS UNDER SEAL**

## I. INTRODUCTION

As part of its trade secrets litigation against former employee Jaspreet Attariwala ("Defendant" or "Ms. Attariwala"), Plaintiff BioConvergence LLC d/b/a Singota Solutions ("Plaintiff" or "Singota") sought in this Court leave to serve a subpoena by alternative means on Ms. Attariwala's husband, non-party Simranjit J. Singh ("Mr. Singh"), in October 2020. Despite the seemingly limited nature of this Court's involvement in the matter at the time, Singota and Mr. Singh have in the past two years both filed myriad motions that the Court now seeks to address. For the reasons explained below, the Court denies Mr. Singh's motion to quash Singota's subpoena; denies the remainder of Singota's emergency motion to preserve and produce communications; grants in part and denies in part Singota and Mr. Singh's respective proposed inspection protocols; grants in part and denies in part Singota's motion to compel a

resumed deposition of Mr. Singh; denies Singota's motions seeking to compel, hold in contempt, and sanction Mr. Singh; denies Singota's motion for an evidentiary hearing; and grants Singota's motion to file certain documents under seal.

## II.  BACKGROUND

### A.  FACTUAL BACKGROUND

The instant matter comes to this Court with an intricate history that spans several cases across a number of courts, including another court in this District.  In *Bioconvergence LLC v. Singh*, No. 21-cv-2090, 2022 WL 3585649 (D.D.C. Aug. 22, 2022), one of those courts helpfully recounted certain of the facts and allegations relevant here, of which this Court takes judicial notice and reiterates as needed for purposes of this Opinion.  *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (noting that a court has the "authority to judicially notice related proceedings in other courts").

Singota, an Indiana-based life sciences company, employed Ms. Attariwala as a business development manager from September 2015 to December 2018.  *Singh*, 2022 WL 3585649, at *1.  As part of her job, Ms. Attariwala had access to Singota's confidential information, "including current and prospective client lists and proprietary information about the company's products and pricing."  *Id.*  According to Singota, Ms. Attariwala began interviewing for a job with Emergent BioSolutions, Inc. ("Emergent"), a Maryland-based competitor, in October 2018 while still employed by Singota and despite the inclusion of a non-compete clause in her employment contract.  *Id.*  Singota alleges that, "both before and after she secured that new position," Ms. Attariwala "stole lists of clients and information about their business needs that Singota had developed, as well as proprietary information about Singota's business development and client solicitation strategies."  *Id.*

Singota claims further that "at least some of the information was taken with Mr. Singh's cooperation and help—with crucial information forwarded to his personal email, downloaded to his computer, or uploaded to his cloud account." *Id.* Ms. Attariwala and Mr. Singh, who is a practicing attorney, are married and live in Washington, D.C. Pl.'s Mem. of P. & A. in Supp. Mot. to Compel Non-Party Simranjit J. Attariwala to Comply with Subpoena, to Hold Him in Contempt, and to Impose Sanctions for Bad-Faith Litigation Misconduct ("Pl.'s Mem. Supp. Pl.'s Mot. to Compel, Hold in Contempt, and Impose Sanctions") at 4–5, ECF No. 15.

After Singota sent Ms. Attariwala a cease and desist letter in January 2019, *Singh*, 2022 WL 3585649, at *1, Singota then also sued her in Indiana state court, *id.* at *2. In March 2019, that court "entered a temporary restraining order and then a preliminary injunction against" Ms. Attariwala, which "precluded [her] from using Singota's data and required her to preserve, identify, and return any confidential information in her possession." *Id.* Although the court also "appointed a forensic expert . . . to help identify confidential information" in Ms. Attariwala's possession, Ms. Attariwala, per Singota, "delayed providing or concealed devices and accounts with relevant information from the court-appointed expert—including ones belonging to Mr. Singh." *Id.* As a result, the state court orally held Ms. Attariwala in contempt in April 2019. *Id.* Ms. Attariwala then removed the case to the U.S. District Court for the Southern District of Indiana. *Id.* That case, *BioConvergence LLC v. Attariwala*, No. 1:19-cv-1745-SEB-MG (S.D. Ind.), remains ongoing as well.

In June 2019, Singota amended its complaint in its Southern District of Indiana case, to add Mr. Singh as a defendant and allege that he "had received Singota's confidential information and conspired with Attariwala to misappropriate trade secrets and help her violate her employment agreement." *Singh*, 2022 WL 3585649, at *2. But the Southern District of Indiana

granted Mr. Singh's motion to dismiss, concluding that "Singota had not established that Singh, a District of Columbia resident, had purposefully directed any of his allegedly tortious conduct at Indiana, sufficient for that court to exercise personal jurisdiction over him." *Id.* Seeking discovery from Mr. Singh, Singota came to this Court in October 2020 after numerous unsuccessful attempts to serve its subpoena on Mr. Singh. Pl.'s Mot. for Leave to Serve Subpoena by Alternative Means ("Pl.'s Mot. to Serve Subpoena") at 1, ECF No. 1.

### B.  PROCEDURAL BACKGROUND

Since the successful service of Mr. Singh in January 2021, *see* Submission of Aff. of Personal Serv. at 1, ECF No. 10, Singota and Mr. Singh have together filed nine motions[1] pending with this Court. To impose some semblance of order onto this jumble of motions, the Court has grouped them by topic: quashing of the subpoena, discovery, sanctions, sealing, and an evidentiary hearing.

First, Mr. Singh has filed a motion to quash, objecting to Singota's subpoena based on relevance, timeliness, undue burden, and privilege. Non-Party Sim J. Singh's Mot. to Quash Subpoena ("Non-Party Mot. to Quash Subpoena") at 8–25, ECF No. 34. Second, both parties have, at the Court's direction, submitted proposed protocols for inspection of an external hard drive selected by Singota. *See* Non-Party Sim J. Singh's Mot. to Enter Proposed Forensic Inspection Protocol ("Non-Party's Proposed Protocol"), ECF No. 71; Pl.'s Submission of Proposed Protocol ("Pl.'s Proposed Protocol"), ECF No. 72.

Singota has also filed two motions regarding certain other discovery matters. One of these motions alleges that, during Mr. Singh's deposition on November 4, 2021, Mr. Singh

---

[1] Singota's submission of its proposed inspection protocol was styled not as a motion, but merely as a submission. To the extent that Singota's filing should in fact have been filed as a motion, the Court will in its discretion construe Singota's filing as a motion.

communicated electronically with his counsel.  Plaintiff's Emer. Mot. to Compel to Preserve and

Produc. Communic'ns ("Pl.'s Emer. Mot. to Compel to Produc. Commc'ns") at 3, ECF No. 35.

Singota thus seeks production of any written communications between Mr. Singh and his counsel

or anyone else concerning and during the deposition.  *Id.* at 6.  In a minute order issued on

November 5, 2021, the Court granted this motion in part and ordered Mr. Singh and his counsel

to preserve such communications, without addressing whether those communications should be

produced.  *See* Min. Order (Nov. 5, 2021).  Mr. Singh has since submitted the text messages that

he exchanged with counsel during his deposition to the Court for in camera *ex parte* review.  *See*

Min. Entry (Jan. 14, 2022); Joint Status Report at 5, ECF No. 62.  In another motion, Singota

requests that the Court compel Mr. Singh to answer questions that he refused to answer during

his deposition based on various objections, including the assertion of several privileges.  Pl.'s

Mot. to Compel a Resumed Dep. of Non-Party Simranjit R. Singh on Certified Questions ("Pl.'s

Mot. to Compel Resumed Dep.") at 1, ECF No. 50.

Third, Singota has filed two motions seeking sanctions against Mr. Singh.  The first of

these motions not only requests that the Court compel Mr. Singh to comply with Singota's

subpoena and hold him in contempt, but also asks the Court to sanction him for his "spoliation

and his bad-faith litigation conduct" in deleting three emails.  Pl.'s Mem. Supp. Pl.'s Mot. to

Compel, Hold in Contempt, and Impose Sanctions at 31.  Singota contends that the "spoliation

and bad-faith conduct should also be imputed to Ms. Attariwala, leading to a default judgment or

adverse inference against her and other sanctions."  *Id.*; *see also* Pl.'s Submission of Deleted

Emails, Mot. for Evid. Hr'g, and Not. Regarding Selection of Device for Initial Inspection ("Pl.'s

Mot. for Evid. Hr'g") at 5, ECF No. 57 (asking that the Court "enter an order drawing adverse

inferences against both Mr. Singh and Ms. Attariwala").  The second of these motions claims

that Mr. Singh failed to comply with the directions issued by the Court during its November 19, 2021 hearing with the parties, namely by refusing to identify three emails that he deleted. Plaintiff's Mot. to Sanction Non-Party Simranjit R. Singh and Status Report ("Pl.'s Mot. to Sanction") at 1, ECF No. 44. Singota asks that the Court, as a result of Mr. Singh's conduct, grant Singota's motion to compel, to hold Mr. Singh in contempt, and to impose sanctions. *Id.* at 17.

Fourth, Mr. Singh has since furnished details about those three emails to Singota. Pl.'s Mot. for Evid. Hr'g at 10–13. Having identified the three emails with that information, Singota now seeks to file certain documents under seal, in addition to requesting an evidentiary hearing on its motion to compel that would appear to focus on Mr. Singh's deletion of the three emails. Pl.'s Mot. for Leave to File and Maintain Confidential Business Docs. Under Seal ("Pl.'s Mot. for Leave to File under Seal") at 1, ECF No. 56; Pl.'s Mot. for Evid. Hr'g at 4–5.

Each of these nine motions is now ripe for the Court's consideration.

### III.  ANALYSIS

### A.  Motion to Quash Subpoena

Mr. Singh objects to Singota's subpoena on several grounds: (1) Singota has not shown the relevance of the information that it seeks from Mr. Singh's files and devices, *see* Non-Party Mot. to Quash Subpoena at 8–13; (2) the subpoena is unduly burdensome, *see id.* at 13–18; (3) the subpoena seeks confidential, trade secret, and privileged information belonging to Mr. Singh's employer, *see id.* at 18; and (4) the subpoena seeks information and communications protected by various privileges, *see id.* at 19–25. Given the Court's incremental approach to discovery as explained below, however, Mr. Singh's motion to quash the subpoena is moot.

Federal Rule of Civil Procedure 45 requires "that district courts quash subpoenas that call for privileged matter or would cause an undue burden," *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007), but "[t]he burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged," *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010). "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). Accordingly, "[a] court should be loathe to quash a subpoena if other protection of less absolute character is possible." *Id.*; *see also Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986) ("When a court is confronted with a motion to quash, its duty is not to deny discovery altogether, but to reduce the demand to a reasonable level, considering the parties' concerns.").

Here, Singota has made a reasonable argument as to why it believes Mr. Singh may have its confidential information in his possession and should be subject to discovery: a computer forensic expert has identified devices and accounts that may contain information Singota alleges was misappropriated by Ms. Attariwala, but Ms. Attariwala has not produced certain of these devices and accounts because she claims they instead belong to Mr. Singh. *See* Pl.'s Opp'n to Non-Party Mot. to Quash Subpoena at 4–5, ECF No. 38. For the reasons that the Court previously indicated during a hearing with the parties on November 19, 2021, however, the Court will not for the time being enforce Singota's subpoena in full. Instead, the Court will proceed "in an incremental fashion" that begins with the inspection of a single device chosen by Singota. Hr'g Transcript at 26, ECF No. 46. As explained below, the inspection of the one device will be tailored to balance Singota's interest in finding its confidential information and Mr. Singh's privacy interests. Mr. Singh will be able to object to the production of any materials

on the device that may contain entirely personal information or that may be protected by privilege. This approach addresses Mr. Singh's concerns about the subpoena, rendering it unnecessary for now for the Court to resort to the "extraordinary measure" of quashing the subpoena. *Flanagan*, 231 F.R.D. at 102.

### B. Proposed Inspection Protocols

During its hearing on November 19, 2021, the Court directed the parties to confer and propose an inspection protocol for one of Mr. Singh's devices to be selected by Singota. Hr'g Transcript at 26–27. The Court warned Singota to "choose wisely," and indicated that, if the chosen device was found not to contain Singota's confidential information, the Court "may not let [Singota] go any further than that." *Id.* at 26. Acknowledging that Singota "[had] a basis to look" for its information within reasonable limits, the Court advised that it did not "have a basis at [that] point to turn [Mr. Singh's] life upside down either." *Id.* Singota has since chosen to inspect an external hard drive (the "Device") that Mr. Singh has represented contains a copy of a discarded Western Digital My Book Drive. Pl.'s Proposed Forensic Exam. Protocol at 1, ECF No. 72-3; Non-Party's Proposed Protocol at 3. Because the parties could not agree on a proposed protocol for joint submission, however, they have each filed an inspection protocol for the Court's consideration.[2] In addition to explaining its reasoning below, the Court has produced a final inspection protocol, included as Attachment A to this Opinion, that will govern the inspection of the Device.

---

[2] Mr. Singh asserts that, because Singota's proposed protocol was not filed as a motion pursuant to Federal Rule of Civil Procedure 7(b)(1), it should be rejected. Non-Party Opp'n to Pl.'s Proposed Protocol at 11, ECF No. 73. To the extent that Singota's filing should in fact have been filed as a motion, the Court will in its discretion construe Singota's filing as a motion.

The parties' proposed protocols diverge in seven major respects.  First, Singota's protocol would require that the forensic examiner (the "Examiner") opine, if possible, as to whether the Device is a copy of the Western Digital My Book Drive or explain "what factors prevent the Examiner from providing an opinion."  Pl.'s Proposed Forensic Exam. Protocol at 3.  The Examiner would then also "[r]eport any evidence that tends to show what computers this Device has been connected to and when," as well as "any deletions from, manipulations of data on, and irregularities concerning the integrity of the Device."  *Id.*  Mr. Singh contends that his proposed protocol—which does not provide for such an investigatory step—would not prevent the Examiner from conducting the same analysis using Mr. Singh's MacBook Pro, nor would it preclude the Examiner from reporting any data manipulations or irregularities.  Non-Party Opp'n to Pl.'s Proposed Protocol at 14–15.

The Court agrees with Singota that this whole exercise would be meaningless if it cannot, as a threshold matter, at least try to determine whether or not the Device is in fact the copy of the Western Digital My Book Drive that Singota seeks.  *See* Pl.'s Submission of Proposed Protocol at 6–7, ECF No. 72.  Mr. Singh advocates unconvincingly for a more circuitous route—that, rather than examining the Device itself for this information, the Examiner should use Mr. Singh's MacBook Pro to find out whether he copied the Western Digital My Book Drive to the Device.  Non-Party Response Opp'n to Pl.'s Proposed Protocol at 14.  Yet in his deposition testimony, Mr. Singh was less than definitive in answering whether he in fact used the MacBook Pro to make this transfer.  *See* Pl.'s Submission of Proposed Protocol at 3–4 (citation omitted).  His approach also would not address whether Mr. Singh has in fact provided the hard drive to which he purportedly copied the Western Digital My Book Drive, or just some other hard drive.  Thus, even if Mr. Singh's approach were technologically possible, the Court declines to make

the Examiner's task more difficult than necessary, particularly if, as Singota represents, the Examiner may extract this information from the source—the Device—itself.

The Court will also allow the Examiner to report the other devices to which the Device has been connected—which may be relevant information for the future, should Singota find its confidential information on the Device—and any irregularities or manipulations that may be relevant to Singota's search.  Mr. Singh claims that his protocol already allows for the reporting of any such irregularities, Non-Party Response Opp'n to Pl.'s Proposed Protocol at 15, but his protocol limits such irregularities to those "related to the Relevant Singota ESI," Non-Party Proposed Forensic Exam. Protocol at 3, ECF No. 71-2.  The Court would strike a more clearly stated middle ground, to allow the reporting of any irregularities or manipulations that may impact the examination's findings as to whether the Device contains Singota's confidential information.

Second, Singota and Mr. Singh disagree on the proper time period to which the forensic imaging report should be restricted.  While Mr. Singh advocates to limit the report to the period from October 1, 2018 to the present, Non-Party Proposed Forensic Exam. Protocol at 2, Singota contends that, with certain exceptions, the relevant time period for the analysis should be set to September 1, 2015 to the present, Pl.'s Proposed Forensic Exam. Protocol at 2.  According to Singota, Ms. Attariwala may have misappropriated Singota's information since the start of her employment and so the analysis "should cover her entire time of employment by Singota."  Pl.'s Submission of Proposed Protocol at 8.  But it is the Court's understanding that Singota has thus far alleged only that Ms. Attariwala misappropriated information in anticipation of and in the course of seeking employment with Emergent, and not that Ms. Attariwala may have been misappropriating confidential information from the start of her employment with Singota.  *See,*

*e.g.*, *Singh*, 2022 WL 3585649, at *1.  Accordingly, Singota's proposed time period casts too wide a net.  But Mr. Singh's proposed time period is also too narrow.  For instance, one of Singota's allegations relates to a Singota manufacturing questionnaire apparently sent to Mr. Singh's Gmail account in as early as June 2018, *see* Pl.'s Mem. Supp. Pl.'s Mot. to Compel, Hold in Contempt, and Impose Sanctions at 13, which Mr. Singh claims Ms. Attariwala sent to him either "inadvertently" or "so that she could obtain his assistance in adjusting the document formatting or something along those lines," Non-Party Mem. Opp'n Pl.'s Mot. to Compel, Hold in Contempt, and Impose Sanctions at 6, ECF No. 22.  Given that Ms. Attariwala's motivations for sending this document in June 2018 are in dispute, its existence counsels in favor of, again, finding a reasonable midpoint between Singota and Mr. Singh's proposed timeframes.  The Court concludes that it would be reasonable to limit the time period for the forensic imaging report to January 1, 2018 to present, except that four points of analysis will not be subject to time restrictions: (1) the determination of the Drive's format date, (2) the conclusion as to whether the Device is a copy of the Western Digital My Book Drive, (3) any evidence that tends to show what other devices this Device has been connected to and when, and (4) the determination of any irregularities or manipulations that may impact the examination's findings as to whether the Device contains Singota's confidential information.

Third, Mr. Singh has proposed that, after the Device has been imaged and returned to him, the parties will within seven business days "agree as to the creation of a keyword list . . . that shall be used by the Examiner as the methodology to conduct his search of the device and manual review . . . ."  Non-Party Proposed Forensic Exam. Protocol at 3.  Mr. Singh also suggests that, if there are terms that Singota wishes to remain confidential, the parties will "confer and reach an agreement or bring the matter to the Court to decide."  *Id.*  If the parties

cannot agree on a keyword list, they will have five business days to present "competing methodologies" to the Court. *Id.* Singota, on the other hand, objects to any requirement to agree to search terms with Mr. Singh and asks that it also be permitted to use data analysis tools beyond keyword searches. Pl.'s Submission of Proposed Protocol at 10–11.

The Court will not require that Singota obtain Mr. Singh's approval for its keyword list. Considering the apparent difficulties the parties had in negotiating a joint protocol, and the number of months it has taken for them to submit separate proposals, it seems fantastical that the parties would reach an agreed-upon keyword list within seven days. Indeed, to the extent that Mr. Singh has anything to hide on this Device, it would be in his interest to not only prevent the inclusion of any potentially effective search terms from Singota's keyword list, but to also prolong the process and add to Singota's incurred costs. *See* Pl.'s Submission of Proposed Protocol at 10. For the same reasons, the two parties have motive to submit vastly different keyword lists to the Court, and the Court is not in a position to stitch together appropriate search terms. As the Court has previously indicated, the purpose of this inspection is to allow Singota a reasonable opportunity to search the Device and demonstrate whether it should be allowed to proceed with additional searches. At this step, the Court will accord Singota the ability to take its best shot at rooting out its ESI, to the extent any exists on the Device, because its ability to search other devices is likely dependent on the results of this search. Singota will therefore be permitted to devise keyword searches as it wishes, and the Examiner may also use data analysis tools beyond keyword searches as Singota proposes. Within 30 days of returning the Device to Mr. Singh, the Examiner will create the Examiner List and provide copies to both Singota and Mr. Singh's counsel.

Fourth, Singota wishes to revise the terms governing payment for this endeavor and allow the possibility that the burden of payment may be shifted "subject to further order of this Court or the U.S. District Court for the Southern District of Indiana in which the underlying litigation is pending." Pl.'s Proposed Forensic Exam. Protocol at 1.  This is a reasonable caveat.  As the Court has stated, Singota will bear the cost of this examination because "[t]here has to be some incentive for Singota to stop at some point."  Hr'g Transcript at 27.  But the Court believes that allowing for the possibility of cost-shifting will incentivize Mr. Singh to timely comply with this examination; so long as he does so in good faith, the Court sees no reason to shift the costs from Singota.  The Court also sees no reason to dictate Singota's terms of payment with the Examiner; it is in Singota's interest to complete the examination as soon as possible.[3]

Fifth, Mr. Singh contends that the Examiner should furnish the forensic imaging report only to his counsel because providing it to Singota "would have the effect of giving control to Singota's counsel over a master list . . . containing a list of all of the names of the files and emails" in the Device and "would ensure Singota engages in a fishing expedition."  Non-Party Opp'n to Pl.'s Proposed Protocol at 15.  Singota responds that this limitation would be "improper," because Singota would "have no way of challenging any attempt by Singh to exclude potentially relevant files from the final list prepared by the Examiner."  Pl.'s Submission of Proposed Protocol at 9.  Though the Court recognizes that this examination process should be as transparent as possible to both parties, the Court also concludes that it would be unnecessarily intrusive to provide Singota with an unfettered list of all files and emails within the relevant time period on the Device, in all likelihood including some containing entirely personal information,

---

[3] However, the Court also forewarns Singota that it will not regard kindly any frivolous attempts to shift the costs of the examination or to pause the examination over a dispute over which party should pay.

in the first instance.  Singota's interest properly lies in the list only *after* it has been winnowed through application of Singota's keyword searches.  Both parties will have access to this second, narrower list (the "Examiner List") containing information most likely to be relevant to Singota[4]—and it is this list that Mr. Singh will subsequently review for privileged and personal information.  However, as previously explained, Singota also has a proper interest in four parts of the report: the format date of the Device, the opinion as to whether the Device is a copy of Western Digital My Book Drive, the other devices to which this Device has been connected and when, and any manipulations or irregularities that may affect the examination's findings as to whether the Device contains Singota's confidential information.  The Examiner will therefore provide these four components of the report to both Singota and Mr. Singh's counsel, though it will only provide the initial list of all files and emails to Mr. Singh's counsel.

Sixth, upon receipt of the Examiner List, Mr. Singh's counsel will, within 30 calendar days, produce a log and a list of files and emails on the Examiner List that Mr. Singh believes contains entirely personal or privileged information.  For each file or email included on the Examiner List that Mr. Singh claims to be entirely personal or privileged, Mr. Singh will provide a brief explanation of its contents and why it may have been captured by the Singota keyword searches.  Mr. Singh states that this requirement would be "unnecessarily burdensome," yet fails to explain why putting his objections in writing—when he must already conduct this review for privileged or personal information anyways under his own proposed protocol—would be unduly burdensome.  Non-Party Opp'n to Pl.'s Proposed Protocol at 17.  The Examiner will then

---

[4] Contrary to Mr. Singh's proposal to receive access to the Examiner List first, so that his counsel may review for privilege and personal information and only then provide Singota with a list of relevant information, both parties will receive the Examiner List at the same time.  *See* Non-Party Proposed Forensic Exam. Protocol at 3–4.

provide Singota full access to the files and emails on the Examiner List to which Mr. Singh has not objected as either privileged or personal.  Singota will at that point meet and confer with Mr. Singh about any dispute regarding his withholdings based on claims of personal or privileged contents.  If the parties cannot resolve a dispute, Singota will request that the Court review in camera any of the Examiner List files and emails to which Mr. Singh has raised objections, but Singota will be required to provide an explanation as to why it challenges Mr. Singh's objection to each file or email.  Should either of the parties' confidential information be produced to the other over the course of the examination, the parties will meet and confer to seek agreement on, or otherwise seek from the Court, a protective order.  *See* Pl.'s Proposed Forensic Exam. Protocol at 4–5.  Neither party may file any such purportedly confidential information in any underlying or related litigation, however, until the Court has resolved any request for a protective order over the information.

Seventh, Singota's proposal provides that the Examiner will not destroy any data until the conclusion of the underlying action in the Southern District of Indiana.  Pl.'s Proposed Forensic Exam. Protocol at 5.  By contrast, Mr. Singh requests that, "[o]nce the parties have agreed or the Court has determined that all [relevant Singota information] has been extracted from the device data in possession of the Examiner, the Examiner will within 15 business days destroy all other data in his possession . . . ."  Non-Party Proposed Forensic Exam. Protocol at 4.  The Court agrees with Mr. Singh that his proposal better protects his privacy interests once the relevant Singota information has already been extracted from the Device.  Singota has not provided any reason why it or the Examiner ought to be allowed to hold on indefinitely to information that the parties or the Court have determined to be irrelevant for this endeavor.

The two protocols also differ in other, more minor respects regarding the mailing of the Device and maintenance of a search log.  Mr. Singh may, as he proposes, ship the Device to the Examiner by FedEx within seven business days of the issuance of this Opinion; he need not ship it overnight, so long as he provides Singota with a tracking number.  Non-Party Proposed Forensic Exam. Protocol at 1.  As explained above, the Court will allow Singota to devise its search terms as it wishes.  To avoid the need for a protective order over any confidential terms Singota may use in its search, the Court will not require the Examiner to maintain or provide to Mr. Singh or his counsel a search log of all searches run against the Device.  *Id.* at 3.  Finally, the Examiner need not use FedEx's packing services.  *See* Pl.'s Proposed Protocol at 10.

### C.  Motion to Produce Communications

On November 5, 2021, Singota filed an emergency motion to request that the Court order Mr. Singh and his counsel, Hector Oropeza, to preserve and produce any communications between them during Mr. Singh's deposition.  Pl.'s Emer. Mot. to Compel to Produc. Commc'ns at 1.  In the motion, Singota alleges that its Chief Executive Officer observed Mr. Singh looking away from his screen "at least ten times throughout his deposition."  *Id.* at 3.  When asked about these communications during the deposition, Mr. Singh stated that he was communicating with his counsel; Mr. Oropeza then interjected that Mr. Singh and he were communicating about bathroom breaks and lunch breaks.  *Id.*  Mr. Singh has since submitted the text messages that he exchanged with Mr. Oropeza during his deposition to the Court for in camera *ex parte* review.  Mr. Singh objects to production of communications with his counsel during the deposition because, according to Mr. Singh, the communications are protected by attorney-client privilege and "[c]ommunications that could easily be made by a client leaning over to give context to his

16

lawyer had to take place via text in a setting where parties were not in the same location."  Non-Party Opp'n to Pl.'s Emer. Mot. to Compel to Produc. Commc'ns at 2–4, ECF No. 39.

       "It is well settled that it is inappropriate for an attorney to influence or coach a witness during a deposition."  *Musto v. Transp. Workers Union of Am., AFL-CIO*, No. 03-CV-2325, 2009 WL 116960, at *1 (E.D.N.Y. Jan. 16, 2009).  Other courts have also concluded that off-the-record discussions between a deponent and counsel during a deposition, where the purpose of those discussions is not about the assertion of privilege, are not protected by attorney-client privilege.  *See, e.g.*, *Ngai v. Old Navy*, No. CIV.A. 07-5653KSHPS, 2009 WL 2391282, at *4 (D.N.J. July 31, 2009); *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 535 (M.D. Pa. 2002).  As another court in this District has noted, "in general, a deponent and the deponent's attorney have no absolute right to confer during a deposition in a civil proceeding, except for the purpose of determining whether a privilege shall be asserted."  *United States v. Philip Morris Inc.*, 212 F.R.D. 418, 420 (D.D.C. 2002).  But this is also "by no means a categorical prohibition on communications once a deposition has commenced."  *Id.* (citing *Odone v. Croda Int'l PLC*, 170 F.R.D. 66, 68 (D.D.C. 1997)).  Instead, a court must balance "several countervailing factors" in determining the limit of communications between a deponent and the deponent's attorney, including "the deponent's right to counsel, the importance of ensuring that depositions are free from impermissible coaching and reflect true and accurate testimony, and the practical necessity of permitting the free flow of communications between clients and their counsel on a day-to-day basis."  *Id.*

       Having reviewed the text communications between Mr. Singh and Mr. Oropeza, the Court will not order the production of those communications because it does not appear from the text messages that Mr. Oropeza was "coaching" Mr. Singh off-the-record.  Nor is it evident that

production of these communications would provide helpful illumination to the parties as to the limited matter before this Court.  Further, the Court will not order Mr. Singh to produce communications with any other individuals during the deposition, given that Singota has merely speculated, and has not provided any evidence, that Mr. Singh could have conferred with others about his deposition as it took place.  Even so, the Court cautions Mr. Singh and Mr. Oropeza that their conduct during the deposition treads close to the line at which the Court might reasonably have considered the possibility of sanctions.  The Court disagrees with Mr. Singh that these communications could have occurred had the deposition taken place in person; it was therefore inappropriate for Mr. Singh and Mr. Oropeza to take advantage of the fact that the deposition was taking place remotely to engage in these communications.  "The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks." *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993).  Both Mr. Singh and his counsel should keep this purpose in mind going forward, particularly as Mr. Singh is re-deposed as instructed below.

### D.  Motion to Compel Deposition

Singota further requests that the Court allow Singota to resume its deposition and further compel Mr. Singh to answer 39 questions[5] that, based primarily on his assertions of various privileges, he did not answer during his deposition on November 4, 2021.  Pl.'s Mot. to Compel Resumed Dep. at 1, 19–22.  In response, Mr. Singh contends that not only has Singota failed to demonstrate the relevance of its deposition questions, but Mr. Singh has also properly asserted

---

[5] Singota states that Mr. Singh did not answer 40 questions during the deposition, Pl.'s Mot. to Compel Resumed Dep. at 1, but Questions 34 and 36 as listed by Singota are duplicates, *id.* at 22.

the applicability of "spousal" and attorney-client privileges.  Non-Party Opp'n to Pl.'s Mot. to

Compel Resumed Dep. at 3–8, ECF No. 52.[6]

     A party that "withholds information otherwise discoverable by claiming that the

information is privileged" must "describe the nature of the documents, communications, or

tangible things not produced or disclosed—and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim."  Fed. R.

Civ. P. 26(b)(5).  In other words, "Rule 26(b) of the Federal Rules of Civil Procedure requires

the disclosure of requested relevant information not privileged and reasonably calculated to lead

to the discovery of admissible evidence."  *Alexander v. F.B.I. ("Alexander II")*, 186 F.R.D. 78,

97 (D.D.C. 1998).  In turn, "[a] motion to compel for failure to provide relevant information

sought through discovery requires the court to determine if the materials or testimony sought are

relevant to the action and whether all or part of the materials or testimony are covered by a

privilege that prevents disclosure."  *Id.*  Where a privilege "is asserted as a reason to not answer"

a deposition question, "it must be a recognized privilege."  *Neuberger Berman Real Est. Income*

*Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 421 (D. Md. 2005).  Thus, "[i]f the reason

put forward is improper, the court may order that the witness be re-deposed."  *Id.* (citation

omitted); *see also* Fed. R. Civ. P. 37(a)(3); *In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646

LAK JCF, 2013 WL 4007531, at *3–6 (S.D.N.Y. Aug. 5, 2013).  Consistent with Federal Rule

---

[6] Mr. Singh also suggests briefly in his opposition that, given that Singota has now filed a claim against Mr. Singh directly in another court in this District, Singota's request to resume the deposition should be "moot."  Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 5.  But the Court sees no reason why the pendency of Singota's separate, direct matter against Mr. Singh should affect the disposition to the instant motion.  Indeed, given Mr. Singh's concerns about the time and resources he has already invested in this litigation, it would appear more efficient for the Court to resume deposition as needed, as opposed to punting any remaining issues related to the deposition taken as part of this matter to another court.

of Civil Procedure 30(d)(1), "the court is required to permit more time [than one day of seven

hours] 'consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the

deponent or another person, or other circumstance, impedes or delays the examination.'"

*Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007) (citation omitted).

In this case, it appears that, in response to the questions at issue in Singota's motion, Mr.

Singh's counsel cited in total three different privileges—the "spousal" privilege,[7] common-

interest privilege, and attorney-client privilege—as well as the attorney work-product doctrine.

*See, e.g.*, Singh Dep. at 34:12–13 (spousal privilege); *id.* at 110:5 (common interest privilege);

*id.* at 40:2 (attorney-client privilege); *id.* at 77:10 (attorney work-product).  The question, then, is

whether these privileges and the doctrine in fact apply, and if not, whether Mr. Singh ought to be

re-deposed and compelled to answer the questions that he previously declined to answer.

### 1.  Choice of Law

As relevant here, Singota first brought various Indiana state law and common law claims

against Ms. Attariwala in Indiana state court, *see BioConvergence LLC d/b/a Singota Solutions v.*

*Jaspreet Attariwala*, No. 1:19-cv-1745-SEB-MG (S.D. Ind.), Ex. 1 to Notice of Removal at 11–

18, ECF No. 4-1, which Ms. Attariwala removed to federal court based on purported diversity

jurisdiction, *see id.*, Redacted Am. Notice of Removal at 6, ECF No. 42-1.  Singota subsequently

filed an amended complaint to add various claims, including ones arising under the Federal

---

[7] Although Mr. Singh's counsel referred at times to both a "spousal privilege" and a
"spousal communications" privilege during the deposition, *see, e.g.*, Singh Dep. at 34:12–13,
ECF No. 50-1, Mr. Singh's opposition to Singota's motion discusses only the marital
communications privilege, *see* Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 5–6.
Given that the testimonial privilege, whereby "the government is precluded from compelling one
spouse to testify against his or her spouse in a criminal case," is not at issue here, Mr. Singh's
objections turn on the applicability of the marital communications privilege.  *United States v.*
*Duran*, 884 F. Supp. 537, 540 (D.D.C. 1995).

Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*, and the Federal Computer Fraud and Abuse

Act, 18 U.S.C. § 1030 *et seq*, and thereby invoked the Southern District of Indiana's federal

question jurisdiction.  *See id.*, Am. Compl. at ¶¶ 101–14, 125–33, ECF No. 30.

Federal Rule of Evidence 501 "governs privileges in federal courts," *Virmani v. Novant*

*Health Inc.*, 259 F.3d 284, 286 (4th Cir. 2001), and "mandates the application of state privileges

in civil actions or proceedings for which state law supplies the rules of decision and federal

privileges for issues or proceedings arising under federal law," *Linde Thomson Langworthy*

*Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*, 5 F.3d 1508, 1512 (D.C. Cir. 1993).  The D.C.

Circuit has thus far "declined to resolve the question of which law to apply when the discovery

being sought is relevant" to both federal and pendant state claims raised in one case, "but the

federal and state privilege rules are inconsistent."  *Barnett v. PA Consulting Grp., Inc.*, No. 04-

cv-1245, 2006 WL 8464884, at *2 (D.D.C. June 30, 2006), *op. set aside in part on recons. on*

*other grounds*, No. 04-cv1245, 2007 WL 845886 (D.D.C. Mar. 19, 2007) (citing *In Re Sealed*

*Case*, 381 F.3d 1205, 1213 (D.C. Cir. 2004)).  Even so, the Circuit has "suggested that concerns

about undermining federal evidentiary interests might weigh in favor of applying federal

privilege law to pendant state law claims."  *Id.*; *see Sealed Case*, 381 F.3d at 1212–13 ("At least

with respect to discovery, 'it would be meaningless to hold the communication privileged for one

set of claims and not for the other.'" (citation omitted)).  Consistent with this reasoning, the

Court applies federal privilege law in considering the instant motion.[8]  *See, e.g.*, *Barnett*, 2006

---

[8] Though the Court recognizes that the D.C. Circuit's discussion of the issue depends in part on a conflict between federal and state privilege law, the Court does not determine whether there is in fact a conflict between federal and state privilege law here.  This case presents the wrinkle that, because the underlying litigation was brought in Indiana, it is unclear whether the state privilege rules at issue would have been those of Indiana or the District of Columbia.  *See Ziegler v. Polaris Indus. Inc.*, No. 1:22-MC-00023-MR-WCM, 2022 WL 16951670, at *4

WL 8464884, at *3; *First Am. Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 61–62 (D.D.C. 1998)

("Where, as here, evidence claimed to be privileged is relevant to both federal and state law

claims, federal common law is applied to claims of privilege.").

## 2. Relevance

As an initial matter, the Court addresses Mr. Singh's general objection that Singota has

not demonstrated the relevance of any of its questions, particularly when Mr. Singh remains a

non-party in the matter. *See* Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 3–4. In

reply, Singota responds that its questions are relevant to issues underlying the litigation in the

Southern District of Indiana, including the whereabouts of certain devices and whether Mr.

Singh may have helped Ms. Attariwala in allegedly misappropriating Singota's information. *See*

Pl.'s Reply Supp. Mot. to Compel Resumed Dep. at 2–3, ECF No. 53. The Court agrees with

Singota that its questions are relevant to the instant matter and the litigation in the Southern

District of Indiana.

During the deposition, Mr. Singh's counsel appeared to in essence raise relevance

objections to Questions 7 and 17. *See* Singh Dep. at 47:13–15; *id.* at 55:21–56:4. The Court

---

(W.D.N.C. Nov. 15, 2022) (conducting choice-of-law analysis to decide whether North Carolina or Michigan's law on privilege governed in case originally filed and dismissed in Michigan federal court, but where motion to quash subpoena at issue was brought in North Carolina federal court). In any case, the D.C. Circuit in *Sealed Case* cited cases from other circuit courts that similarly concluded, without requiring the determination of a conflict between federal and state law, that the federal law of privilege should apply where a case presents both federal and state law claims. *See* 381 F.3d at 221 n.7. These cases from other circuits point the Court toward application of federal privilege law. *See, e.g.*, *Virmani*, 259 F.3d at 287 n. 3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."); *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) ("The problems associated with the application of two separate privilege rules in the same case are readily apparent, especially where, as here, the evidence in dispute is apparently relevant to both the state and the federal claims. This court has resolved this *potential* conflict in favor of federal privilege law." (emphasis added)).

finds the objections inapt, and Singota may re-depose Mr. Singh as to Questions 7 and 17. However, in response to an objection by Mr. Singh's counsel to Question 30 that the affidavit at issue and the responsibility to produce items belonged to Ms. Attariwala, *id.* at 123:8–14, Singota's counsel rephrased the question, *id.* at 123:15–17.  Given that Singota's counsel has already rephrased Question 30, Question 30 is irrelevant and may not be asked again.

### 3. Application of Privileges and Work Product Doctrine

For consistency with the parties' briefing, the Court organizes its analysis of the remaining questions at issue according to Singota's grouping of questions in its motion.

### a. Questions Related to Facts, Acts, and Observations

Singota contends that the Court should compel Mr. Singh to answer Questions 5, 6, 9, 12, 14, 15, 16, 22, 23, 27, 31, and 32 because those questions "merely asked about facts, including his activities related to, and knowledge of, those facts."  Pl.'s Mot. to Compel Resumed Dep. at 23.  According to Singota, the attorney-client and marital communications privileges do not apply because Mr. Singh need not divulge the contents of those communications to answer.  *See id.* at 23–24.  Specifically, those questions ask:

- 5. "Are you aware of whether in early November 2018 Ms. Attariwala met with Patrick DePalma of Emergent?"
- 6. "Are you aware of whether Ms. Attariwala had an on-site interview with Emergent on November 28, 2018?"
- 9. "Do you know when Ms. Attariwala first learned that she would be offered a job by Emergent?"
- 12. "Mr. Singh, I'm going to turn your attention now back to Exhibit 2.  Are you aware of whether on December 11, 2018, Ms. Attariwala created a folder on her Singota Surface computer that she called 'Jessie Docs'"?
- 14. "Mr. Singh, do you have any knowledge as to whether Ms. Attariwala was forwarding Singota data to the jsainil@gmail.com email address in December of 2018?"
- 15. "Did you provide any assistance to Ms. Attariwala in creating .pst backup files of her Singota email in December of 2018?"

- 16. "Did you provide any assistance to Ms. Attariwala in copying files from her Singota Surface computer to a Seagate external drive?"
- 22. "Did you assist her in running any searches on March 3, 2019, in her email account?"[9]
- 23. "Do you know why she didn't make that $15,000 payment pursuant to the order?"
- 27. "Mr. Singh, do you know whether Ms. Attariwala was planning on filing bankruptcy in late April 2019 when there were all these communications between you and Mr. Lynn?"
- 31. "Well, my question in those circumstances would then be, did Ms. Attariwala ask you for permission to produce the SanDisk Cruzer?"
- 32. "Did Ms. Attariwala ask you for information about the Western Digital My Book for purposes of preparing this affidavit?"

*Id.* at 20–22.  The Court must determine whether, by answering these questions, Mr. Singh would necessarily share potentially privileged information or communications.

With respect to Questions 5, 6, 9, 12, [10] 15, 16, 22, and 27[11]—to which Mr. Singh's counsel objected during the deposition based solely on spousal privilege—the answer is evidently no.  Assertion of the marital communications privilege requires four prerequisites: "(1)

---

[9] Although Singota's motion lists Question 22 as stating "*the* email account," Pl.'s Mot. to Compel Resumed Dep. at 21 (emphasis added), the deposition transcript states "*her* email account," Singh Dep. at 83:1 (emphasis added).  The Court follows the phrasing as reflected in the deposition transcript.

[10] During the deposition, Mr. Singh's counsel also raised an objection of hearsay in response to Question 12.  Singh Dep. at 50:4.  Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  *Id.*  Because Mr. Singh need not recount any out-of-court statements to answer Question 12, the objection is inapplicable.  Moreover, hearsay pertains to the question of admissibility, but a party may seek in discovery not just admissible evidence, but also information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002) (quoting Fed. R. Civ. P. 26(b)(1)).

[11] Mr. Singh's counsel also asked Mr. Singh not to answer Question 27 during the deposition because the question relates to "a bankruptcy regarding Mrs. Attariwala in which you have already deposed Mr. Singh."  Singh Dep. at 110:20–23.  The Court will allow the question even though it relates to the bankruptcy matter.

there must have been a communication; (2) there must have been a valid marriage at the time of

the communication; (3) the communication must have been made in confidence; and (4) the

privilege must not have been waived."  *S.E.C. v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997)

(citations omitted).  "It is well established that the privilege applies only to *utterances or*

*expressions* intended by one spouse to convey a message to the other."  *United States v. Lustig*,

555 F.2d 737, 748 (9th Cir. 1977) (citing *Pereira v. United States*, 347 U.S. 1, 6 (1954))

(emphasis added).  Thus, the marital communications privilege protects "only what one spouse

*communicates* to the other, not what one spouse learns about the other in other ways, such as by

observing the other's actions."  *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013)

(emphasis added); *see also United States v. Irons*, 646 F. Supp.2d 927, 957 ("[T]he marital

communications privilege prevents a spouse from testifying about confidential communications

that occurred during the marriage but does not foreclose testimony about the spouse's

observations as to the other spouse's actions and appearance.").

Questions 5, 6, 9, 12, 15, 16, 22, and 27 do not seek the content of any confidential

communications between Ms. Attariwala and Mr. Singh.  Though Questions 5, 6, 9, 12, and 27

seek to elicit from Mr. Singh his knowledge of certain events, they do not ask Mr. Singh to share

anything Ms. Attariwala may have conveyed to him about those events.  Indeed, these questions

do not even begin to broach whether there were any such confidential communications between

them.  And Questions 15, 16, and 22 do not appear to involve communications at all, but relate

instead to whether Mr. Singh provided assistance to Ms. Attariwala by creating backup files,

copying files, or running searches in an email account—that is, whether he acted.  The marital

communications privilege "does not extend to noncommunicative acts."  *United States v. Burks*,

470 F.2d 432, 436 (D.C. Cir. 1972); *United States v. Lewis*, 433 F.2d 1146, 1151 (D.C. Cir.

1970) ("It has not been the rule in the federal courts that acts become confidential communications merely because during coverture they are performed by one spouse in the presence of the other.").  There is no potentially communicative act to even speak of if Mr. Singh did not provide such assistance.  And if Mr. Singh did provide such assistance to Ms. Attariwala, Mr. Singh has not attempted to argue how he may have intended those acts to be communicative. *See* Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 6.  Accordingly, Singota may re-depose Mr. Singh as to Questions 5, 6, 9, 12, 15, 16, 22, and 27.

Questions 31 and 32, however, present closer calls as to whether they involve the substance of communications between Mr. Attariwala and Mr. Singh.  As the Court previously noted, a party must describe "the nature of the . . . communications" over which it asserts a privilege, "without revealing information itself privileged."  Fed. R. Civ. P. 26(b)(5)(ii).  But these two questions come closer to touching upon the substance or content of communications between the spouses because they seek to confirm whether Ms. Attariwala "ask[ed]" Mr. Singh for something.  Pl.'s Mot. to Compel Resumed Dep. at 22.  The Court concludes that, while Question 32 seeks the type of general, foundational information permissible under Federal Rule of Civil Procedure 26(b)(5)—namely, the mere fact of whether communications regarding the Western Digital My Book in relation to the affidavit occurred—Question 31 asks for the actual content of communications between Ms. Attariwala and Mr. Singh about production of the SanDisk Cruzer.  *See id.*  That is, Question 31 is not simply probing *whether* the two discussed production of the SanDisk Cruzer, but may lead to Mr. Singh divulging *what* they discussed regarding permission for producing the device.  However, because the Court is unable to determine the applicability of the marital communications privilege—for instance, whether the communications were confidential—the Court will permit Singota to re-ask Question 31.  Mr.

Singh may then invoke privileges in response as appropriate, but Singota should also ask, within reasonable limits, additional follow-up questions necessary to assess the applicability of any privileges cited.

During the deposition, Mr. Singh's counsel objected that Question 23 "ask[s] for speculation" and appears to have potentially raised other objections to which the Court is not privy because the transcript is unavailable.  *See* Singh Dep. at 100:24–25.  In his opposition to Singota's motion, Mr. Singh also claims that this question involves communications between Mr. Singh and Ms. Attariwala protected by spousal privilege.  Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 6.  The Court will permit Singota to ask Question 23 again because the question as phrased does not require Mr. Singh to speculate as to Ms. Attariwala's reasons for her inactions; it asks merely if he knows those reasons.  Moreover, Mr. Singh's response need not divulge the contents of any privileged communications with Ms. Attariwala and thus does not implicate the marital communications privilege.

### b.  Questions Regarding Documents Seen or Reviewed

Next, Singota contends that it should be permitted to re-depose Mr. Singh as to Questions 1, 11, 25, and 26, which ask:

- 1. "And what emails were those that you reviewed that refreshed your recollection for the deposition today?"
- 11. "I'll scroll through it. I'll represent to you it's been produced to us in the Indiana litigation by Emergent. The Bates number in the bottom right-hand is applied by Emergent, and this appears to be Ms. Attariwala's offer letter from Emergent. And so you've never seen this document before; is that correct?"
- 25. "Have you seen this document before?"
- 26. "But lines 475 and 477 where there's references to a questionnaire, is that a reference to a document like the one that I just showed you marked as Exhibit 26?"

Pl.'s Mot. to Compel Resumed Dep. at 19–21, 25.  According to Singota, neither the attorney-client nor marital communications privilege would apply because the question of whether Mr. Singh has seen or reviewed a document "does not even plausibly call for privileged information," and is instead "a simple 'yes or no' question that does not require the disclosure of any communication with his counsel or spouse."  *Id.* at 25.

In response to Question 1, Mr. Singh's counsel objected based on attorney-client privilege.  *See* Singh Dep. at 20:7–10; *see also* Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 6.  But as Singota argues, *see* Pl.'s Mot. to Compel Resumed Dep. at 25, "once a document is used to refresh the recollection of a witness, privileges as to that document have been waived" as "authorized by Rule 612 of the Federal Rules of Evidence, as incorporated into deposition proceedings by Rule 30(c) of the Federal Rules of Civil Procedure," *Marshall v. U.S. Postal Serv.*, 88 F.R.D. 348, 350 (D.D.C. 1980); *see also Hager v. Bluefield Reg'l Med. Ctr., Inc.*, 170 F.R.D. 70, 79 n.12 (D.D.C. 1997).  Thus, Singota may re-ask Mr. Singh Question 1.

With respect to Question 11, Mr. Singh's counsel objected based on the marital communications privilege.  *See* Singh Dep. at 49:16–18.  As explained above, a question about whether Mr. Singh has seen a document does not impinge on the privilege because responding does not necessitate that Mr. Singh divulge any communications with Ms. Attariwala.  *See Johnson v. Oscar Winski Co., Inc.*, No. 4:18-CV-88-JVB-JEM, 2020 WL 4539620, at *3 (N.D. Ind. Aug. 6, 2020) (rejecting argument of marital communications privilege to the extent that the plaintiffs were "arguing that anything shared with a party's spouse is privileged because of the marriage").

Mr. Singh's counsel then cited an "[o]ngoing objection" to Question 25, without noting a specific objection or privilege that might be applicable.  Singh Dep. at 108:9–10.  Based on the

preceding discussion, it appears that Mr. Singh's counsel sought to object to any "questions related to [Mr. Singh's] wife's filling out of a questionnaire or even his involvement in any bankruptcy proceedings of his wife," *id.* at 107:2–5, and alluded potentially to the applicability of spousal privilege, *see id.* at 107:23–24.  Again, the Court will allow the question even though it relates to the bankruptcy matter.  Moreover, the question of whether Mr. Singh has seen a document before would not require that he divulge any privileged communications with Ms. Attariwala and thus does not impinge on the marital communications privilege.

In response to Question 26, Mr. Singh's counsel objected based on the common interest, spousal, and attorney-client privileges.  *Id.* at 110:4–8.  The Court understands Question 26 to have been seeking clarification about references to a questionnaire in a privilege log arising from the bankruptcy matter.  *See* Singh Dep. at 108:18–109:7.  The Court finds that Singota's question reasonably seeks to "develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection" cited in the privilege log, as opposed to impinging on the substantive contents of the underlying documents, and thus does not implicate the privileges cited.  *Alexander I*, 186 F.R.D. at 46 (citation omitted).

### c.  Questions Regarding Facts or Documents Provided

Without providing citation to any relevant authority, Singota claims that Questions 21, 24, 29, 38, 39, and 40 ought to be permitted because "[t]he identification of persons assisting in answering interrogatories or responding to other discovery requests is a routine request in the course of discovery" and "is not privileged."  Pl.'s Mot. to Compel Resumed Dep. at 24–25 & n.10.  These questions ask:

- 21. "After you learned that the lawsuit had been filed, did you ever copy any documents to provide to Ms. Attariwala's counsel?"
- 24. "Did you assist in filling out this document for Mr. Lynn?"
- 29. "Did you assist Ms. Attariwala in production of this document?"

- 38. "Did you assist Ms. Attariwala in responding to those interrogatories?"
- 39. "In terms of, you know, as somebody with potentially relevant information, did you assist Ms. Attariwala in responding to those interrogatories?"
- 40. "And did you provide this information to Ms. Attariwala so she could complete these interrogatory answers?"

*Id.* at 21–22.

Mr. Singh's counsel objected to Questions 29, 38,[12] and 39 based on marital communications privilege. But, as Plaintiff's argument suggests, Rule 26(b) allows for the discovery of the "identity and location of persons who know of any discoverable matter" as "relevant and proportional to the needs of the case." Committee Notes on Rules – 2015 Amendment; *see also Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 45 (D.D.C. 2005) (rejecting, in case wherein the defendant "refused to identify the individuals who assisted in the preparation of defendant's answers [to interrogatories]," the argument that "the attorney-client and work-product privileges protect the identification of individuals who assisted in preparing the discovery responses"). Moreover, and as explained above, because the questions ask whether Mr. Singh "assist[ed]" Ms. Attariwala, the questions do not by necessity impinge on any confidential communications between Ms. Attariwala and Mr. Singh. Singh Dep. at 122:10–11, 167:12–13, 168:15–17. In answering, Mr. Singh need not divulge the contents of communications with Ms. Attariwala that are protected by spousal privilege, to the extent there were any, and any noncommunicative acts that Mr. Singh performed in providing such assistance would not fall with the protections of the privilege. *See Burks*, 470 F.2d at 436.

---

[12] Mr. Singh's counsel also objected to Question 38 on the premise that Mr. Singh had already answered questions regarding his "involvement in litigation or as any sort of litigation counsel . . . in the prior deposition." Singh Dep. at 168:1–4. Because it is unclear to which deposition Mr. Singh's counsel refers, and given that the Court does not have information to assess whether this question was in fact asked of Mr. Singh in such a prior deposition, the Court will allow Singota to re-ask Question 38 in spite of this objection.

Question 40, to which Mr. Singh's counsel objected based on marital communications privilege,[13] poses a different scenario because it seeks to glean whether Mr. Singh "provide[d]" information to Ms. Attariwala regarding ownership of two computers discussed in her interrogatory responses.  Singh Dep. 170:13–171:4.  As opposed to Questions 29, 38, and 39, which ask more generally about whether Mr. Singh assisted in the preparation of Ms. Attariwala's discovery responses, Question 40 probes the specific content of communications or potentially communicative acts between Ms. Attariwala and Mr. Singh in relation to Ms. Attariwala's interrogatory responses.  Even so, the Court lacks information—namely, whether any such communications or communicative acts were confidential—necessary for assessing the applicability of the privilege.  The Court will permit Singota to re-ask these questions and Mr. Singh may invoke privileges in response as appropriate, but Singota should also ask, within reasonable limits, additional follow-up questions necessary to assess the applicability of any privileges cited.

With respect to Question 21, Mr. Singh's counsel objected based on the attorney work-product doctrine and cited "privileged communications," presumably referring to the attorney-client privilege.  Singh Dep. 77:6–13.  In his opposition to Singota's motion, Mr. Singh also claims that this question involves communications that would implicate communications between Mr. Singh and Ms. Attariwala protected by spousal privilege.  Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 6.  Each of these arguments is unavailing.  First, the attorney work-product doctrine "protects written materials that lawyers prepare 'in anticipation of

---

[13] Mr. Singh's counsel again contended that Question 40 had "been asked and answered." Singh Dep. at 171:6.  The Court understands Mr. Singh's counsel to have been objecting based on questions asked in a prior deposition, and thus rejects the objection for the same reasons previously described.  *See supra*, note 12.

litigation,' ensuring that 'lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials.'" *United States v. Williams Companies, Inc.*, 562 F.3d 387, 393 (D.C. Cir. 2009) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).  But "the 'work-product rule does not extend to every written document generated by an attorney [or] shield from disclosure everything that a lawyer does,'" *Citizens for Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, 583 F. Supp. 2d 146, 158 (D.D.C. 2008) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)), and "[a] document does not become the attorney's work product just because it has been identified, collected, and compiled by the attorney . . . .," *United States v. Badger*, No. 2:10-CV-935-RJS-PMW, 2013 WL 3937023, at *4 (D. Utah July 30, 2013).  Here, not only would a document not be attorney work-product based solely on Mr. Singh copying it and providing it to an attorney, but Singota's question does not probe the contents of any such documents.  Nor does this question impinge on the attorney-client privilege.  Even if "the fact of the transmittal [of a document] might be attorney-client privileged," this question does not require that Mr. Singh reveal what documents he may have sent to Ms. Attariwala's counsel. *Banks v. Off. of Senate Sergeant-At-Arms & Doorkeeper*, 236 F.R.D. 16, 21 (D.D.C. 2006).  And because this question does not touch upon any communications between Ms. Attariwala and Mr. Singh, it does not implicate the marital communications privilege.  *See Lavin*, 111 F.3d at 925.

Mr. Singh's counsel also objected to Question 24 based on the spousal, attorney-client, and common interest privileges.  Singh Dep. at 106:23–107:1.  These privileges do not apply. Here, again, the question does not impinge on any communications between Mr. Singh and Ms. Attariwala that may be privileged, nor has Mr. Singh made any argument that he may have performed any communicative acts.  The question also does not implicate the attorney-client

privilege because, as phrased, it does not require divulging any privileged communications between Mr. Singh and his attorney; that is, the question asks *whether* he assisted in filling out the document, and not *what* information he may have communicated with his attorney.  It follows that the common interest privilege does not apply either.  "The joint defense privilege, often referred to as the common interest rule, is an extension of the attorney-client privilege that protects from forced disclosure communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement."  *Minebea Co. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005) (quoting *United States v. Hsia*, 81 F.Supp.2d 7, 16 (D.D.C. 2000)).  But "'[t]he joint defense or common interest rule presupposes the existence of an otherwise valid privilege,'" and "[a]ll attorney-client communications or work product therefore must first satisfy the traditional requisites for the attorney-client or work product privilege before they become or remain privileged."  *Id.* at 16 (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)).  Without showing the applicability of the attorney-client privilege, Mr. Singh's claim of a common interest privilege must also fail.

### d.  Questions Regarding Consultation with or Representation by Attorney

Finally, Singota asserts that it should be permitted to re-depose Mr. Singh as to Questions 2, 3, 4,[14] 8, 10, 13, 18, 19, 20, 28, 33, 34, 35, and 37 because "[t]he mere fact of meeting with or being represented by counsel and the general scope of any attorney representation are not privileged."  Pl.'s Mot. to Compel Resumed Dep. at 27 & n.12.  These questions ask:

- 2. "Okay. I'll represent to you that this is the privilege log that was filed with your Motion to Quash on this past Friday in the D.C. District Court.  Did you prepare the privilege log?"

---

[14] Although Singota's list of questions appears to mistakenly include Question 3 twice, the Court presumes that Singota intended to refer to Question 4.  *See* Pl.'s Mot. to Compel Resumed Dep. at 27 n.12.

- 3. "But my question is related to, did you provide any legal advice to Ms. Attariwala in preparing her demand letter to Singota?"
- 4. "In line 324, there's an email that appears to be from you to Ms. Attariwala. It states, 'Sim sent Jessie a pdf of the fee agreement.' The next line, 325, is 'fee agreement.' Is that a fee agreement with McNeely Stephenson?"
- 8. "Mr. Singh, did Ms. Attariwala ever seek your advice or opinion about whether it would be appropriate for her to forward a business opportunity to Mr. DePalma while she was still working for Singota?"
- 10. "Did Ms. Attariwala ever ask you for your legal opinion about the enforceability of her employment agreement with Singota?"
- 13. "Did Ms. Attariwala ask for your advice or opinion about whether it was permissible for her to create a Jessie Docs folder or the Jessie Docs folder on her Singota Surface computer?"
- 18. "When Singota has made demands of Ms. Attariwala, did you provide similar advice to Ms. Attariwala with respect to responding to Singota?"
- 19. "Does Ms. Attariwala turn to you regularly for advice concerning legal matters since you're a lawyer?"
- 20. "And in order to preserve my question for the record, I'm going to ask you a question I anticipate your objection to, but I need to ask it. Did Ms. Attariwala discuss this agreement with you before she signed it?"
- 28. "Well, I'm asking you whether your spouse, who is subject to a preliminary injunction order, ever asked you for assistance in complying with that preliminary injunction."
- 33. "Did you provide any advice or assistance to Ms. Attariwala in terms of how to respond to this document?"
- 34. "Mr. Singh, I'm going to show you Exhibit 25. I'll represent to you, again, this is a document that was produced by Emergent, with an Emergent Bates number in the lower right-hand corner. It appears to be a letter from Ms. Attariwala back to Emergent, apparently responding to the write-up that we looked at a moment ago. Did you provide any assistance to Ms. Attariwala in crafting this letter?"
- 35. "Mr. Singh, I want to show you Exhibit 28. This was filed by Ms. Attariwala in the Indiana litigation on February 12, 2020. It's titled, Defendant Jaspreet Attariwala's Response to Preliminary Injunction. Did you provide any assistance to Ms. Attariwala in preparing this response?"
- 37. "Did you participate in preparing this motion?"

*Id.* at 19–22.

With respect to Questions 3, 8, 10, 13, 18, 19, 20, 28, 33, 34, 35, and 37, Mr. Singh's counsel objected based on the marital communications privilege.[15]  First, Question 19 asks only about the general subject matter of communications between Ms. Attariwala and Mr. Singh—whether or not she seeks advice about legal matters, as opposed to the specific content of those communications—and is thus permissible.  *See In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783 (S.D.N.Y. 2010) (noting, in relation to attorney-client privilege, that "the party seeking disclosure nevertheless is entitled to discover the dates and places of and the identities of the participants in the communications, the identities of others who were present and to whom the communications were disclosed, and the general subject matter (but not the content) of the communications").  Second, although as previously explained, Rule 26(b) permits Singota to establish the "nature" and existence of potential communications between Ms. Attariwala and Mr. Singh, Questions 3, 8, 10, 13, 18, and 20 venture into the substance of their communications. Fed. R. Civ. P. 26(b).  For instance, Question 10 does not only seek information as to whether Ms. Attariwala and Mr. Singh have discussed her employment agreement with Singota; it goes

---

[15] Mr. Singh's counsel also contended that Questions 3, 35, and 37 had already been asked and answered.  Singh Dep. at 36:18–20 (objection to Question 3); *id.* at 155:14–18 (objection to Question 35); *id.* at 161:19–20 (objection to Question 37).  First, Mr. Singh stated earlier in the deposition that he did not recall whether he provided legal advice to Ms. Attariwala "regarding a potential claim against Singota relating to her compensation," *id.* at 34:21–35:1, which relates to but does not answer Question 3, as to whether he provided legal advice to Ms. Attariwala in preparing her demand letter to Singota, *id.* at 36:15–17.  Second, Question 35 asks whether Mr. Singh provided "any assistance" to Ms. Attariwala in preparing a particular response.  *Id.* at 155:12–13.  Though Mr. Singh's counsel objected, stating that Mr. Singh had already "answered questions as to whether or not he assisted in any way, shape, or form as an attorney," the question is not limited to assistance that he may have provided as an attorney.  *Id.* at 155:15–17.  Third, Mr. Singh's counsel argued that Question 37 had been "asked and answered," and that it "was discussed in the prior deposition, whether in vague or detailed ways."  *Id.* at 161:20–21.  The Court rejects this argument for the reasons previously discussed. *See supra*, note 12.  Accordingly, the Court will not prevent Singota from re-deposing Mr. Singh on Questions 3, 35, and 37 on the premise that they were already asked and answered.

one step further and asks whether she has asked for his legal opinion about that agreement.  In

short, these questions probe beyond the "general subject matter" of the communications and may

require Mr. Singh to provide details about privileged communications with Ms. Attariwala.

*Chevron*, 736 F. Supp. 2d at 783.  But the Court lacks the necessary information—for instance,

whether any such communications, to the extent they even took place, were confidential—to

determine whether the privilege should in fact apply.  Accordingly, the Court will permit Singota

to re-ask these questions and Mr. Singh may invoke privileges as appropriate; Singota should

then also ask, within reasonable limits, additional questions necessary to assess the application of

any privileges cited.

  Similarly, the Court does not, however, have sufficient information to determine whether

Questions 28, 33, 34, 35, and 37 would impinge upon Mr. Singh's marital communications

privilege.  As phrased, these questions—which ask about "assistance"—leave room for the

possibility that Mr. Singh might answer about noncommunicative acts that would not fall within

the protections of the marital communications privilege.  Consistent with Rule 26(b), Singota

may ask Mr. Singh these four questions again and properly "develop circumstantial facts in order

to explore the propriety of the assertion of the privilege, immunity, or other objection."

*Alexander I*, 186 F.R.D. at 46 (citation omitted)

  In response to Question 2, Mr. Singh's counsel objected on the basis of the attorney

work-product doctrine during the deposition.  Singh Dep. at 29:20–22.  In his opposition to

Singota's motion, Mr. Singh further claims the applicability of attorney-client privilege.  Non-

Party Opp'n to Pl.'s Mot. to Compel Resumed Dep. at 6.  But both objections are inapposite

here.  The attorney work-product privilege "protects written materials that lawyers prepare 'in

anticipation of litigation,' ensuring that 'lawyers can prepare for litigation without fear that

opponents may obtain their private notes, memoranda, correspondence, and other written

materials.'" *United States v. Williams Companies, Inc.*, 562 F.3d 387, 393 (D.C. Cir. 2009)

(quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).  The question of whether or not

Mr. Singh prepared a privilege log does not even delve into the contents of the written material

itself.  *See Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 142 (D.D.C.

2013) ("The work-product rule does not extend to every written document generated by an

attorney; it does not shield from disclosure everything that a lawyer does." (citation omitted)).

Nor does it implicate any confidential communications between Mr. Singh and his counsel that

might be subject to attorney-client privilege.  *See Cobell v. Norton*, 213 F.R.D. 69, 72

(D.D.C. 2003).

 And finally, Mr. Singh's counsel objected to Question 4 based on attorney-client and

common interest privilege during the deposition.  Singh Dep. at 39:20–40:4.  Mr. Singh further

claims the applicability of spousal privilege in his opposition.  Non-Party Opp'n to Pl.'s Mot. to

Compel Resumed Dep. at 6.  Based on the Court's reading of the transcript, Singota appears to

have been asking Mr. Singh for clarification regarding a statement on a privilege log that

describes an email exchanged between Mr. Singh and Ms. Attariwala.  *See* Singh Dep. at 29:16–

19 (beginning sequence of questions regarding privilege log filed with motion to quash).  The

Court finds that Singota's question reasonably seeks to "develop circumstantial facts in order to

explore the propriety of the assertion of the privilege, immunity, or other objection" cited in the

privilege log, as opposed to impinging on the substantive contents of the underlying documents,

and thus does not implicate the privileges cited.  *Alexander I*, 186 F.R.D. at 46 (citation omitted).

 In summary, the Court finds good cause to justify allowing Singota to resume its

deposition of Mr. Singh as to the questions it listed in its motion except Question 30.  Seeing no

need to apply the parties' arguments regarding the crime-fraud exception, the Court does not address them here.  As explained later in this Opinion, the Court will also permit Singota to depose Mr. Singh regarding his deletion of three emails.  To allow Singota enough time to accomplish both objectives, the Court will allow Singota to resume its deposition of Mr. Singh for one day of five hours uninterrupted by unjustified or meritless objections.

In anticipation of the resumed deposition, the Court also observes that Mr. Singh's counsel's "[s]peaking objections, interruptions, statements and lectures are not appropriate [during a deposition] and a witness may be instructed not to answer only if the question calls for privileged information." *Blumenthal v. Drudge*, 186 F.R.D. 236, 241 n. 5 (D.D.C. 1999) (citing Fed. R. Civ. P. 30(d)); *see also* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."); *Neuberger*, 230 F.R.D. at 420 ("Counsel should not instruct the deponent to not answer except in very limited circumstances because of the disruption it causes.").  Speaking objections, which may "prod the deponent to raise the same objection voiced by counsel" or "alert the deponent that the examiner is eliciting information harmful to the party represented by the objecting counsel," are "impermissible because they inhibit the truth-seeking function of depositions." *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 317–18 (N.D. Fla. 2021).  At times, Mr. Singh's counsel responded to Singota's questions during the deposition with his own explanation for why a question was not relevant. *See, e.g.*, Singh Dep. at 123:8–14.  Moreover, even though Mr. Singh's counsel objected to certain questions based on relevance rather than an assertion of privilege, he nevertheless instructed his client not to answer the questions. *See, e.g.*, *id.* at 47:13–15; *id.* at 56:7–8.  Such an instruction was not appropriate in these circumstances.  Counsel should note that "objections

to deposition questions must be stated 'concisely and in a non-argumentative and non-aggressive manner.'" *Blumenthal*, 186 F.R.D. at 241 n. 5 (quoting Fed. R. Civ. P. 30(d)).

### 4. Fee for Motion to Compel Deposition

Singota further requests that the Court order an award of reasonable expenses in making its motion to compel Mr. Singh's resumed deposition, Pl.'s Mot. to Compel Resumed Dep. at 31, to which Mr. Singh does not directly respond, *see generally* Non-Party Opp'n to Pl.'s Mot. to Compel Resumed Dep.  As evident from the explanation above, Mr. Singh and his counsel in general raised seemingly excessive and premature privilege objections, disrupting—and, at times, completely halting—certain lines of questioning and necessitating the expense of an additional deposition.  Even so, for a number of the questions, the Court still lacks the information to determine whether a cited privilege properly applies.  The Court thus will not here grant Singota's request for reasonable expenses for preparing Singota's motion to compel Mr. Singh's resumed deposition, but will instead order Mr. Singh to pay the court reporter his or her fees and costs for the resumed deposition.  Mr. Singh should be forewarned, however, that the Court will award reasonable fees should the resumed deposition be unreasonably disrupted by his or his counsel's conduct.

### E.  Motions to Compel, Hold in Contempt, Sanction, and Hold Evidentiary Hearing

Next, Singota has filed a motion requesting that the Court compel Mr. Singh to comply with Singota's subpoena in full, hold Mr. Singh in contempt for refusing to produce certain documents in response to Singota's subpoena, sanction Mr. Singh for "spoliation and his bad-faith litigation conduct," and require that Mr. Singh pay Singota's attorneys' and expert's fees and costs.  Pl.'s Mem. Supp. Pl.'s Mot. to Compel, Hold in Contempt, and Impose Sanctions at 31.  Another of Singota's motions claims that Mr. Singh has failed to comply with the directions

issued by the Court during its November 19, 2021 hearing with the parties.  Pl.'s Mot. to

Sanction at 1.

First, as already indicated above in addressing Mr. Singh's motion to quash, the Court

will not for the time being enforce Singota's subpoena in full.  Instead, the Court will proceed

"in an incremental fashion" that begins with the inspection of a single device chosen by Singota.

Hr'g Transcript at 26.  Should this limited inspection reveal the presence of Singota's

confidential information on Mr. Singh's device, the Court will decide whether to allow Singota

to renew its motion to compel Mr. Singh's compliance with the subpoena at that time.  At

present, however, the Court will deny the motion insofar as it asks that the Court compel Mr.

Singh to comply with the subpoena in full and hold Mr. Singh in contempt.

Second, Singota asks that the Court sanction Mr. Singh "for bad faith litigation conduct

for interfering with discovery and for spoliating evidence, including [his] yearlong evasion of

service of Singota's subpoena and [his] admitted deletion of relevant evidence during the

pendency of this action."  Pl.'s Mem. Supp. Pl.'s Mot. to Compel, Hold in Contempt, and Impose

Sanctions at 1–2.  Specifically, Singota alleges that Mr. Singh "destroyed evidence" by deleting

three emails, despite being "under a duty to preserve these emails when he deleted them."  *Id.* at

42.  Relatedly, Singota has filed an additional motion for sanctions, claiming that Mr. Singh had

at the time of the motion refused to identify the three emails that he deleted and to agree on an

inspection protocol.  Pl.'s Mot. to Sanction at 13–14.  Singota asks that the Court not only

require that Mr. Singh compensate "for its attorneys' and expert's fees in pursuing this discovery

from Mr. [Singh] and for any future fees it will incur to attempt to remedy Mr. [Singh's]

deletions and reconstruct what he did with the data," but that the Court or the Southern District

of Indiana "impute Mr. [Singh's] spoliation to Ms. Attariwala and enter a default judgment or

40

other appropriate remedial sanction against her to the extent Singota's claims relate to the deleted emails."  Pl.'s Mem. Supp. Pl.'s Mot. to Compel, Hold in Contempt, and Impose Sanctions at 44–45; *see also* Pl.'s Mot. for Evid. Hr'g at 5–6 (requesting that the Court "enter an order drawing adverse inferences against both Mr. Singh and Ms. Attariwala," and order Mr. Singh to reimburse Singota for related costs).

Singota's complaints regarding the inability to agree on a proposed inspection protocol are now moot, given the Court's directions above.  As the Court also stated clearly in its November 19, 2021 hearing with the parties, it considers the service issues to be "water under the bridge" at this stage.  Hr'g Transcript at 19.  Thus, the only question that remains is whether the Court will sanction Mr. Singh for either or both of two actions: (1) his deletion of the three emails; and (2) his delayed cooperation in identifying specific details about the three emails, which he provided to Singota in February 2022, Pl.'s Mot. to Compel Resumed Dep. at 17, despite having previously represented to the Court that the only information that he had regarding the emails were the "date range of the emails and the accounts related to those emails," Non-Party Opp'n Pl.'s Mot. for Sanctions at 2, ECF No. 47.

Courts have inherent power to impose sanctions to protect the integrity of the judicial process, *see Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995); *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43 (D.D.C. 2019), and "[a] court's inherent authority to sanction extends to the conduct of a nonparty," *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 611 (D. Del. 2008) (citing *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994)).  This inherent power allows courts to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."  *Shepherd*,

62 F.3d at 1472.  In seeking sanctions for spoliation, a party must show: "(1) the party that lost the information had a duty to preserve it when it was destroyed; (2) the destruction was accompanied by a culpable state of mind; and (3) the spoliated information was relevant to the claims or defenses of the party that sought the discovery."  *Borum*, 332 F.R.D. at 44.

As illustrated by some of the questions that Singota suggested for an evidentiary hearing, there remain numerous unanswered questions about Mr. Singh's deletion of the emails.  *See* Pl.'s Mot. for Evid. Hr'g at 4–5.  Specifically, the Court would be interested in understanding the circumstances in which Mr. Singh deleted the emails (for instance, when he did so, and what was occurring in Singota's litigation against him and Ms. Attariwala at the time), his motivations for deleting these specific emails, the location of these emails at the time of the deletions, and the reasons for his delay in providing details about the emails to Singota.  Without this information, the Court will not now impose sanctions on Mr. Singh for this conduct and will therefore deny Singota's various motions insofar as they seek sanctions and related attorneys' fees and costs. Moreover, the Court will deny Singota's motion insofar as it seeks an evidentiary hearing on these issues.  The Court will instead permit Singota to depose, within reasonable limits, Mr. Singh about the deletion of the three emails to ascertain the information necessary for the Court to decide whether sanctions may be warranted.  Singota will also be permitted to re-file a motion for sanctions, if merited.

### F.  Motion to Seal

Finally, Singota proposes to file under seal certain documents related to Mr. Singh's deletion of the three emails, contending that these documents contain confidential business-related information.  *See* Pl.'s Mot. for Leave to File under Seal at 1.  Mr. Singh objects to Singota's filing those documents under seal and appears to argue that not only would Mr. Singh

be prejudiced if he is only permitted access to redacted versions, but Singota also failed to confer

with opposing counsel as required under Local Civil Rule 7(m).  *See* Non-Party Opp'n to Pl.'s

Mot. to Seal at 2–5, ECF No. 63.  The Court observes that, before reaching out to the Court,

Singota's counsel appropriately sought to ascertain Mr. Singh's position on its proposal to

submit the emails for *ex parte* review.  *See* Ex. 1 to Pl.'s Reply in Supp. Mot. to Seal at 2, ECF

No. 67-1.  The Court then specifically directed Singota to file the emails under seal, but did not

address whether Singota should file other, accompanying documents under seal as well.  *See* Ex.

2 to Pl.'s Reply in Supp. Mot. to Seal at 1–2, ECF No. 67-2.  However, Singota acknowledged

that it would be willing to "enter into some form of attorneys-eyes'-only protective order."  Pl.'s

Reply in Supp. Mot. to Seal at 5 n.1, ECF No. 67.  The Court will therefore grant Singota's

motion to file the documents under seal, but will also order the parties to confer and propose a

protective order whereby Mr. Singh's counsel will be permitted access to unredacted versions of

the documents for their eyes only, but will not share or otherwise disseminate the contents

redacted from the publicly filed versions.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Mr. Singh's motion to quash Singota's

subpoena; denies the remainder of Singota's emergency motion to preserve and produce

communications; grants in part and denies in part Singota and Mr. Singh's respective proposed

inspection protocols; grants in part and denies in part Singota's motion to compel a resumed

deposition of Mr. Singh; denies Singota's motions seeking to compel, hold in contempt, and

sanction Mr. Singh; denies Singota's motion for an evidentiary hearing; and grants Singota's

motion to file certain documents under seal.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued.


Dated:  February 17, 2023                                    RUDOLPH CONTRERAS
                                                            United States District Judge